UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ADEM BADOGLU, on behalf of himself and others similarly situated,

Plaintiff,

v.

**Case No. 1:26-cv-02945 (RPK) (SDE)**

AKSARAY, INC., BAKI GUVEN, and YUSUF ALBARDAK,

Defendants.
---------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE**

AKIN & SALAMAN, PLLC
By: Zafer A. Akin, Esq.
45 Broadway, Suite 1420
New York, New York 10006
Telephone (212) 825-1400
zafer@akinlaws.com

*Attorneys for Defendants Aksaray, Inc., Baki Guven, and Yusuf Albardak*

## TABLE OF CONTENTS


**I. PRELIMINARY STATEMENT** ........ **2**

1. Denial and/or Abeyance of the motion for FLSA Collective ........ 2

**II. STATEMENT OF FACTS** ........ **3**

**III. ARGUMENTS** ........ **5**

A. Plaintiff's Entire FLSA Claims are Time-Barred on the Face of the Complaint Requiring the instant Application to be Stayed / Denied without Prejudice ........ 5

B. Second Circuit's Two-Step Process for Certifying a Collective Action ........ 8

C. Conditional Certification Standard Requiring a Factual Showing ........ 8

D. Any Collective Should Be Limited to Servers ........ 9

E. Plaintiff's Proposed Notice and Deadlines Should Be Rejected ........ 10

F. Notice Should Not Extend Beyond the Period of Plaintiff's Employment ........ 11

G. Information Sought on Potential Opt-In Plaintiffs Must be Limited ........ 11

H. No Notice Should Issue To Individuals Who Released Their Claims ........ 13

I. Defendants Should Not Be Required to Post Notice at the Workplace ........ 13

J. Tolling of the Statute of Limitation Period is Not Warranted ........ 13

K. Defendants Preserve All Rights As To Decertification, Rule 23, and the Governing Standard ........ 14

**IV. CONCLUSION** ........ **15**

**CERTIFICATE OF COMPLIANCE** ........ **17**

# TABLE OF AUTHORITIES

**CASES**

*Ademi v. Cent. Park Boathouse, LLC*, No. 22-cv-8535 (CM), 2023 U.S. Dist. LEXIS 170402 (S.D.N.Y. Sept. 25, 2023) ........ 9, 11, 12

*Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901 (CM)(LMS), 2007 WL 1552511 (S.D.N.Y. Apr. 26, 2007) ........ 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 7

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 2005 U.S. Dist. LEXIS 2884 (S.D.N.Y. 2005) ........ 8

*Cano v. Four M Food Corp.*, 2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009) ........ 10

*Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.), cert. denied, 409 U.S. 948 (1972) ... 6

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) ........ 12

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003) ........ 10

*Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311 (S.D.N.Y. 2001) ........ 14

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) ........ 8

*Hens v. ClientLogic Operating Corp.*, 2006 U.S. Dist. LEXIS 69021, 2006 WL 2795620 (W.D.N.Y. Sept. 22, 2006) ........ 9

*Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794 (RWS), 2013 WL 3199292 (S.D.N.Y. June 25, 2013) ........ 9

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) ........ 13

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ........ 10

*Iavorski v. U.S. INS*, 232 F.3d 124 (2d Cir. 2000) ........ 14

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) ........ 8

*Johnson v. Nyack Hosp.*, 86 F.3d 8 (2d Cir. 1996) ........ 14

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ........ 8, 13

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ........ 8

*McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012) ........ 8

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ........ 5, 6

*Mendoza v. Casa De Cambio Delgado, Inc.*, 2008 U.S. Dist. LEXIS 27519, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ........ 10

*Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20 (2d Cir. 1985) ........ 14

*Prizmic v. Armour, Inc.*, 2006 U.S. Dist. LEXIS 42627, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ....................9

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) ....................8

*Shajan v. Barolo, Ltd.*, 2010 U.S. Dist. LEXIS 54581, 2010 WL 2218095 (S.D.N.Y. June 2, 2010) ....................13

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013) ....................12

*Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315 (2d Cir. 2021) ....................5, 6

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74 (2d Cir. 2003) ....................14

**STATUTES**

29 U.S.C. § 213 ....................15

29 U.S.C. § 216(b) ....................15

29 U.S.C. § 255 ....................13

29 U.S.C. § 255(a) ....................5, 6

29 U.S.C. § 256 ....................13

29 U.S.C. §§ 259, 260 ....................15

New York Labor Law ....................15

**RULES**

Fed. R. Civ. P. 23 ....................14, 15

E.D.N.Y. Local Civil Rule 7.1(c) ....................17

## I. PRELIMINARY STATEMENT

Defendants Aksaray, Inc., Baki Guven, and Yusuf Albardak (hereinafter "Defendants") submit this memorandum: (1) opposing the conditional certification and the issuance of notices at this early stage of litigation or hold it in abeyance since the applicable two-year statute of limitation had already expired prior to the commencement of this action (the Plaintiff has not yet proven the willfulness required to invoke the three-year exception). In the alternative (2) in partial opposition to the instant motion seeking a conditional certification of an FLSA collective, limiting any collective and any notice to the actual showing, not the Plaintiff's broad wishful request.

**1. Denial and/or Abeyance of the motion for FLSA Collective**

Plaintiff Adem Badoglu (hereinafter "Plaintiff") asks for a three-year notice period going back to May 18, 2023, and for notice to employees said to be working to the present, over two years after Plaintiff's own employment ended. While asking for a three-year notice period, Plaintiff offers nothing beyond a boilerplate willfulness allegation. Plaintiff's assertion that unlawful practices continue rests entirely on vague, hearsay statements of unnamed former coworkers.

Aksaray is a small restaurant in Brooklyn employing only servers (*see* Compl., and Plaintiff's Decl.). The entire tipped service employees list consist of only the wait staff; there are no runners, no bussers, and no bartenders (there is no bar at the restaurant). Yet Plaintiff asks the Court to authorize notice to a collective of servers, runners, bussers, and bartenders that do not exist. The only employees Plaintiff describes, including the two coworkers he names (Sevval and Pelin), are all servers, like himself (Plaintiff's Decl.).

The Defendant's positions is that the Plaintiff was a part-time employee who was paid at

or above the applicable wage and seldom worked overtime disputing the merits of Plaintiff's claims in its entirety (refer to the Defendants' Answer, ECF No. 8). As such, even under the lenient standard, notice must be calibrated to the evidence. This Court should not attempt to resolve questions of merit at this time and should not authorize notice broader than what the Plaintiff's showings actually support.

## II. STATEMENT OF FACTS

1. Aksaray is a single small restaurant located in Brooklyn, New York (Complaint ¶ 3). The Restaurant does not employ runners, bussers, or bartenders. Plaintiff's declaration describes only servers that allegedly spoke with him. Plaintiff identifies the two coworkers as Sevval and Pelin, both of whom were servers. (Badoglu Decl. ¶ 8.) The declaration does not mention a single runner, busser, or bartender, and does not describe the pay of any employee in any position other than a server.

2. As to the period after his employment ended, Plaintiff states only that unidentified former coworkers have informed him that the Restaurant continues until today to pay a day rate that is allegedly in violation of the FLSA (Id. ¶ 10).

3. Plaintiff worked as a server at the Restaurant from approximately September 2022 to May 9, 2024. Although the Plaintiff does not know the last date that he worked in May of 2024, his last day of employment was in fact May 9, 2026, as indicated in the punch records, previously provided to the Plaintiff (annexed hereto as Exhibit A)[1].

[1] The Plaintiff, as admitted by his own declaration (¶ 5) and the Complaint (¶ 3) he worked from approximately 12:00 pm to 11:00 pm, his shift. The punch record showing commencement of employment for punches on or about 11:00 am to about 1:00 pm (Plaintiff was late to work at times) are those of the Plaintiff. Punches at other times were not that of the Plaintiff. The managers used the ID of the Plaintiff and other employees to log into the POST system whenever they needed to access information. The managers (owners) did not have a separate ID for the POST system.

4. Although Plaintiff asserts that he worked between 4-6 days per week (Badoglu Decl. ¶ 5), the Restaurant’s payroll records, which have been provided to Plaintiff’s counsel, show that Plaintiff worked about three to four days per week, averaging roughly three and one-half days. Since the Plaintiff's shifts, were spread over only three to four days per week, Plaintiff seldom worked more than forty hours in a workweek (Exhibit A).

5. Aksaray paid Plaintiff a daily rate plus tips. In 2022 and 2023, when the applicable minimum wage was $15.00 per hour and the food-service tip credit was $5.00 (yielding a cash wage of $10.00), Plaintiff was paid $120 per day for the 11 hours he worked. In 2024, when the minimum wage rose to $16.00 and the tip credit to $5.35 (yielding a cash wage of $10.65), Plaintiff was paid $130 per day for the 11 hours he worked, which Plaintiff concedes (Badoglu Decl. ¶ 9.). Defendants contend that this compensation met or exceeded all wages due for the hours Plaintiff actually worked, defying any allegation of a willful wage violation by the Defendants that is contrary to the FLSA.

6. Plaintiff commenced this action on May 18, 2026 (see the Complaint). The instant motion seeks a conditional certification of the FLSA collective for all Aksaray staff employed by the Defendants on or after May 18, 2023 (for a three-year period). Since the Plaintiff has offered no evidence of a willful violation to support a three-year time period, the earliest actionable date under the applicable standard statute of limitations is May 18, 2024 (a period of time that does not cover Plaintiff's employment).

7. Defendants have answered and denied the material allegations of the Complaint; deny that this action may proceed on a collective basis; deny that the individual Defendants were Plaintiff’s employers; and assert, among other defenses, that Plaintiff was paid in full and that if

---

They used that of the staff to log in. Despite the confusion created, the Plaintiff’s punches are still distinguishable from his shift, which Plaintiff does not dispute by way of the complaint and/or his declaration.

there was in fact any violation of the FLSA, it most certainly was not willful (See Answer ECF No. 8).

## III. ARGUMENTS

### A. Plaintiff's Entire FLSA Claims are Time-Barred on the Face of the Complaint Requiring the instant Application to be Stayed / Denied without Prejudice

It is undisputed that the Plaintiff’s employment ended on May 9, 2024, and that this action was not commenced until May 18, 2026, more than two years later and nine days after the two-year limitation period expired. Plaintiff’s FLSA claims are therefore untimely unless he can invoke the three-year exception for willful violations. This is arithmetic, not argument.

Plaintiff's motion proceeds as though the three-year time period is the standard and the two year time period is the exception. That is not the case. Two year time period is the rule and the three year time period is the "except" which is only available once the issue of willfulness is resolved; see 29 U.S.C. § 255(a). In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), the Supreme Court reasoning that “The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations” held that “Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, ... [the Plaintiff] must prove that the employer's conduct was willful…” at 135. To secure the three-year period, a plaintiff must plead facts that plausibly support an inference of willfulness. A conclusory allegation that the defendant acted “willfully” does not suffice. See *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021).

Plaintiff asks the Court to authorize notice reaching back three years, to May 18, 2023,

although the FLSA's limitations period is only two years; the three-year period applies only "if the cause of action arises out of a willful violation." 29 U.S.C. § 255(a). Willfulness cannot be presumed. It is Plaintiff's burden to prove that Defendants "either knew or showed reckless disregard for the matter of whether [their] conduct was prohibited" by the FLSA. See *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988) citing *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.)[, *cert. denied*, 409 U.S. 948 (1972)] " where the Court held that "an action is willful when... there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?"

Badoglu Complaint alleges willfulness only in the conclusory terms which the Court in *Whiteside,* 995 F.3d 315, rejected. As "willfulness", the Plaintiff's instant Motion relies only on the complaint filed by a former waitress / server, Suzan Dogan (Plaintiff's Exhibit 3), to suggest that Defendants were on notice of an improper pay practice. Undisputedly, the Dogan complaint was filed on or about September 10, 2024, which was over four (4) months after the Plaintiff had already resigned. No complaint was filed by anyone during the time when the Plaintiff was employed. A lawsuit commenced after Plaintiff separated cannot establish that Defendants acted willfully toward the Plaintiff during his employment. There is simply nothing in the record to suggest that Defendants knew that their employment and method of pay regarding the Plaintiff was improper especially since the Plaintiff was paid over the minimum wage.

The Complaint recites the statutory adjective in a conclusory manner and stops at that point. There is no allegation that Defendants were ever told their practices were unlawful; no claim that any employee complained; no claim of any prior audits, investigations, citations, or lawsuits; no admission from any person; and no practice suggesting consciousness of

wrongdoing. There are simply no facts at all from which knowledge or reckless disregard could be inferred. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's own submissions cut against the willfulness argument. Plaintiff was paid a daily rate that, on Defendants' records, met or exceeded the applicable minimum wage, and he concedes that his rate was increased when the minimum wage rose in 2024. (Badoglu Decl. ¶ 9.) An employer's payment of a facially compliant, above-minimum daily rate to a part-time worker who seldom crossed the forty-hour threshold cannot be concluded as having knowing or acting reckless. Because Plaintiff has not shown the willfulness required to extend the limitations period, the Court should authorize notice for the two-year period only.

Since the Plaintiff cannot invoke the three-year time period, there is simply nothing left of his FLSA claims. Defendants are not moving to dismiss the claim at this time; we are merely raising the point since it is dispositive of the relief sought by the Plaintiff. The Plaintiff is asking this Court to write into a Court authorized notice a three-year look-back period, without which the Notice would not exist. The Court should not grant the former while treating the latter as a question for another day.

As such, Defendant's respectfully submit that a Plaintiff with no timely claim of his own cannot be a collective representative. Absent willfulness, the Plaintiff has no viable claim, no recoverable hour and no recoverable dollar. As such, he cannot seek to have this Court summon others into a lawsuit that he, himself cannot maintain. That is not a collective action, it is a search for a plaintiff.

**B. Second Circuit's Two-Step Process for Certifying a Collective Action.**

In the Second Circuit there is a two-stage process for deciding whether certification is proper. See *Hamadou v. Hess Corp.*, 915 F.Supp.2d 651, 660 (S.D.N.Y. 2013). In the first stage, the court looks at the pleadings and affidavits filed with the court to determine if plaintiff satisfies "the minimal burden of showing that the similarly situated requirement is met." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). If the court finds that the plaintiff has shown that potential opt-in employees are similarly situated, the court will conditionally certify the collective action, send notice to the potential collective plaintiffs, and extend to those potential plaintiffs an opportunity to opt-in to the collective action. See, *Hamadou*, 915 F.Supp.2d at 660; *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007).

The second stage occurs after discovery. At that point, the Court examines the record and "undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated." See *McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 442 (S.D.N.Y. 2012). If the court determines that the collective members and the named plaintiff are not similarly situated, then the court may de-certify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice. quoting *Lynch v. United Servs. Auto. Ass 'n,* 491 F.Supp.2d 357, 367 (S.D.N.Y. 2007).

**C. Conditional Certification Standard Requiring a Factual Showing.**

While the Plaintiff's burden only requires a modest factual showing at this stage, it nonetheless cannot be predicated upon conclusory allegations, anecdotal hearsay or unsupported

assertions. See *Barfield v .. New York City Health and Hospitals Corp*., 2005 U.S. Dist. LEXIS 2884 at *3 (S.D.N.Y. 2005); *Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) Rather, to satisfy this preliminary burden, the Court looks to see if based upon the pleadings, affidavits and declarations that the named plaintiff has demonstrated that the proposed class members are "similarly situated" to him or her. *Hens v. ClientLogic Operating Corp.*, 2006 U.S. Dist. LEXIS 69021 at *3, 2006 WL 2795620 (W.D.N.Y. Sept. 22, 2006); see also *Prizmic v. Armour, Inc.*, 2006 U.S. dist. LEXIS 42627, 2006 WL 1662614 at *3 (E.D.N.Y. June 12, 2006)

**D. Any Collective Should Be Limited to Servers.**

Plaintiff seeks notice to “servers, runners, bussers, and bartenders.” The only one of those positions Plaintiff has said anything about is his own: server. His declaration recounts his own experience as a server and relays what two other servers—Sevval and Pelin—told him about their pay. (Badoglu Decl. ¶¶ 4-8.) It says nothing about any runner, busser, or bartender. That silence is dispositive as to those positions. A plaintiff carries his burden by showing that he and the proposed opt-ins “were victims of a common policy or plan,” and by supplying at least a “factual nexus” between his situation and theirs. Plaintiff supplies neither as to non-server positions while the application seeks to join bussers, runners and bartenders despite the Plaintiff not offering a single observation, conversation, or fact about them.

The problem here is even more fundamental: there are no runners, bussers, or bartenders at Aksaray, which the Plaintiff does not dispute. A court will not authorize notice to categories of employees who do not exist. That is precisely what occurred in *Ademi*, where the plaintiff, like Plaintiff here, sought to represent a list of front-of-house tipped positions, but two of them

(“captains” and “assistants”) “did not actually exist at the restaurant.” The court granted certification as to the positions that existed and were supported by the plaintiff’s declaration, but struck the positions that were non existing. Id. The same result should follow here. If the Court certifies any collective, it should limit that collective to servers, and the words “runners, bussers, and bartenders” should be stricken from the collective definition and from any notice.

**E. Plaintiff's Proposed Notice And Deadlines Should Be Rejected**

The Supreme Court has abstained from reviewing the contents of a proposed notice under §216(b ), noting that such "details" should be left to the broad discretion of the trial court. Hoffman, 493 U.S. at 170 ("we decline to examine the terms of the notice .... We confirm the existence of the trial court's discretion, not the details of its exercise.").

Here, defendants object to the form of the current proposed notice in that it fails to include Defendants' Counsel's information. See *Cano v. Four M. Food Corp.*, 2009 U.S. Dist. LEXIS 7780 at *34 (E.D.N.Y. Feb. 3, 2009) ("The Court agrees that both counsel's contact information should be included in the notice"); see also *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d at 108. Further, in the event that the Court grants conditional certification, Defendants request that the parties be given an opportunity to meet and confer towards drafting a fair and accurate notice that is agreeable to both parties. Courts routinely permit such practice to ensure that notices are fair and accurate. See *Cano*, 2009 U.S. Dist. LEXIS 7780 at *34 ("In accordance with this Memorandum and Order, the parties shall submit a joint proposed notice of pendency to the Court for approval 'in order to ensure that the drafting and distribution of the notice is timely, accurate and informative.'"); see also *Mendoza v. Casa De Cambio Delgado, Inc.*, 2008 U.S. Dist. LEXIS 27519, 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008) ("Courts

have wide discretion here to grant certification, allow discovery, and regulate notice.") .

Accordingly, should the Court grant the instant motion in favor of the Plaintiff, it is respectfully requested that the parties be given thirty (30) days from the decision of this motion to submit a joint proposed notice, and sixty (60) days from the decision of this motion to provide relevant contact information of potential opt-ins Plaintiffs.

**F. Notice Should Not Extend Beyond the Period of Plaintiff's Employment**.

Plaintiff's proposed collective has no end date: he seeks notice to employees said to be working "to this day." That request outruns his knowledge. Plaintiff worked at the Restaurant only through May 2024. Whatever he can attest to about the Restaurant's pay practices, he can attest to only for the period he was there. His claim that the Restaurant "continues until today" to pay a day rate is expressly based not on personal knowledge but on what unnamed "former coworkers" have supposedly "informed" him (Badoglu Decl. ¶ 10.). Another unsubstantiated self-serving conclusory allegation. Such vague, second-hand assertions, naming no one in specific, describing no specific conversation, and covering a period Plaintiff never worked, cannot support notice to employees hired after Plaintiff's departure.

Courts confine the notice period on a collective to what the plaintiff's evidence actually supports. In *Ademi*, the court declined to extend the collective to employees "currently" employed as of its decision, holding that the "current" employees who could receive notice were those employed as of the filing of the complaint, not an open-ended future group.

**G. Information Sought on Potential Opt-In Plaintiffs Must be Limited.**

Plaintiff seeks production of the names and contact information for the potential opt-ins.

Defendants do not dispute that some production, consisting of the names and last known addresses of Servers employed during the time of Plaintiff's employment (within the bounds of the Statue of Limitations) is customary once a collective is conditionally certified. Any such production, however, should track the collective the Court actually certifies. Defendants should not be required to produce information for positions that do not exist or that Plaintiff has not supported (runners, bussers, and bartenders), or for individuals employed outside the proper notice period. Defendants respectfully request that any production order be limited to servers employed during the period the Court approves, and that the parties be permitted to address the appropriate categories and format of production, and the entry of a suitable protective order, before any information is exchanged.

In addition to the names and addresses, Plaintiff has also requested, albeit improperly, a list of the last known phone numbers, last known e-mail addresses, dates of employment, and position(s) held for the opt-in plaintiffs. This is an improper and overbroad reach. "Courts within [the Second Circuit] routinely grant plaintiffs motions to compel production of the names and addresses of potentially similarly situated employees .... " but not the broad information sought by the Plaintiff herein. See *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901(CM)(LMS), 2007 WL 1552511 at *7 (S.D.N.Y. Apr. 26, 2007). Likewise, in *Ademi*, the Court referencing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007); and *Trinidad v. Fret A Manger* (USA) Ltd., 962 F. Supp. 2d 545, 564 (S.D.N.Y.) responded to the Plaintiff that also requested such items by holding and declaring that "Only the names and current or last known addresses of class members may be provided to the Plaintiff " Id at__, reasoning that "... frankly, until a person opts into the claim, such personal information as email addresses and Social Security numbers are none of Plaintiffs business."

**H. No Notice Should Issue To Individuals Who Released Their Claims**

For the reasons set forth herein, any order should exclude from the collective, and from the notice list, any individual who has executed a release of the claims asserted in this action, including any individual who released such claims in connection with the resolution of the prior action Plaintiff himself places before the Court. Defendants will identify any such individuals in writing when they produce the contact list, so that the exclusion can be verified rather than assumed.

**I. Defendants Should Not Be Required to Post Notice at the Workplace**

Plaintiff requests that the Court permit notice to be physically posted in the store for all current employees to see. However, if the Court grants conditional certification, there will be no need to post notice in the workplace because all current employees will be receiving notice through various mediums, i.e., mail, e-mail, etc. As there will be multiple options for current employees to receive notice, a physical posting should not be required. See *Shajan v. Barolo,* 2010 U.S. Dist. LEXIS 54581 at *5, 2010 WL 2218095 (S.D.N.Y. June 2, 2010) ("Since all current employees will be receiving the notice, there is no need to require defendants to post the notice in the workplace.")

**J. Tolling of the Statute of Limitation Period is Not Warranted**

In a collective action suit such as this, the statute of limitations period continues to run with respect to each potential plaintiffs collective action claim until that plaintiff files the written consent form opting into the suit. *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 198-99 (S.D.N.Y.

2006) (citing 29 U.S.C. §§ 255, 256); *Hoffman v. Sbarra, Inc.* 982 F. Supp. 249, 260 (S.D.N.Y. Oct. 22, 1997) ("[O]nly by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled.").

The court may apply equitable tolling "as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." *Iavorski v. United States I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). An extraordinary circumstance might exist if the employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action, see *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), or if the defendant concealed from the plaintiff the existence of the cause of action, *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 323 (S.D .N.Y. 2001) (explaining that statute of limitations begins to run when plaintiff either acquires actual knowledge of facts comprising his claim or should have acquired such knowledge through reasonable diligence). *Zerilli-Eedelglass v. New York City Transit Auth.*, 333 F.3d 74 (2d Cir. 2003) (The Second Circuit has cautioned that the doctrine should be invoked "only in rare and exceptional circumstances").

As an initial matter, plaintiff has failed to allege any exceptional circumstances that would justify tolling the limitations period.. Furthermore, it is not yet clear whether any potential opt-in plaintiffs will even be time- barred from joining this action. As such, it is unnecessary to determine the issue of tolling at this juncture..

**K. Defendants Preserve All Rights As To Decertification, Rule 23, and the Governing Standard**

Defendants expressly reserve the right to move, following the close of discovery, to decertify the collective and to dismiss the claims of any or all opt-in plaintiffs on the ground that

they are not in fact similarly situated if warranted.

Defendants request that the order direct the parties to meet and confer within fourteen days of the close of the opt-in period and submit a proposed schedule for such a motion, and that it confirm Defendants' right to serve written discovery upon and depose opt-in plaintiffs, subject to the ordinary limits and each party's right to seek relief from the Court.

Defendants further note that conditional certification under § 216(b) applies a standard wholly distinct from that governing class certification under Rule 23. Any order entered on this motion should have no bearing on any motion to certify a Rule 23 class asserting NYLL claims. Defendants reserve all opposition to any such motion, including as to numerosity, commonality, typicality, adequacy, predominance, and superiority.

Furthermore, Defendants reserve all defenses, individual and collective, including all exemptions under 29 U.S.C. § 213 and the NYLL; all defenses concerning hours worked, regular rate, tip credit, tip pooling, meal credit, spread of hours, call-in pay, uniform allowance, and wage notice and wage statement claims; all limitations defenses; all offsets and credits; the good-faith defenses under 29 U.S.C. §§ 259 and 260; all defenses to individual liability; and all defenses to willfulness and liquidated damages.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order denying Plaintiffs motion in its entirety, with prejudice, together with such other and further relief as the Court deems just and proper, or alternatively, that the Court limit the scope of plaintiff's notice and grant such further relief to Defendants as requested herein.

Dated: New York, New York
September 17, 2026

AKIN & SALAMAN, PLLC
Attorneys for Defendants

*Zafer A. Akin*

______________________
Zafer A. Akin, Esq.
45 Broadway, Suite 1420
New York, New York 10006
Telephone (212) 825-1400
zafer@akinlaws**.com**

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing memorandum of law complies with the word-count limitation stated in EDNY Local Rule 7.1(c). Excluding the case caption, tables, this certification, and counsel's signature block, but including all footnotes, this brief contains 4,329 words. I make this certification using the word count feature of Microsoft Word.

*Zafer A. Akin*

Zafer A. Akin, Esq.